# APRIL TERM, 1918.*

---

## PEOPLE v. PRETSWELL.

1. CRIMINAL LAW—MANSLAUGHTER—CORPUS DELICTI—PRIMA FACIE PROOF.

Where, on a prosecution for manslaughter, it appeared that defendant was driving an automobile at the rate of 30 to 35 miles an hour and ran over a boy; that the "body" was picked up from the street and carried to a grass plot; that a doctor testified that he performed a *post mortem* examination on the body of the boy, and that death was caused by a fractured skull; that said doctor was not cross-examined, nor his unequivocal testimony of identity shaken or questioned. *Held*, that the *corpus delicti* was *prima facie* established. OSTRANDER, C. J., and STONE, J., dissenting.

2. SAME—CORPUS DELICTI—TRIAL—EX PARTE AFFIDAVITS.

In such prosecution, whether or not the *corpus delicti* was proven depended upon what occurred upon the trial, and not upon what was made to appear by a *post* trial *ex parte* affidavit in support of a motion to set aside the verdict; if defendant's counsel had cross-examined the affiant upon the trial and brought out the facts disclosed in the affidavit, another question would be presented. OSTRANDER, C. J., and STONE, J., dissenting.

3. SAME—ADMISSIONS—APPEAL AND ERROR.

Where, on such prosecution defendant's counsel conceded, in open court, in the presence of defendant, that the death of the boy was established, he is estopped to question the *prima facie* proof of the *corpus delicti*. OSTRANDER, C. J., and STONE, J., dissenting.

4. APPEAL AND ERROR—ADMISSIONS—RES JUDICATA.

In a civil case a judicial admission is binding, not only upon the trial then in hand, but also on a subsequent trial of the same case.

---

*Continued from Vol. 201.

5. SAME—EVIDENCE—ADMISSION OF TESTIMONY—OBJECTIONS NOT RAISED ON TRIAL.

Error cannot be predicated on the admission of testimony to which no objection was interposed on the trial.

6. CRIMINAL LAW—MANSLAUGHTER — AUTOMOBILES — IDENTITY OF DRIVER—EVIDENCE—SUFFICIENCY.

Evidence *held*, to warrant a finding that defendant was the driver of the car.

7. SAME—INSTRUCTIONS.

*Held*, that the trial court, in his instructions, fairly applied the principles laid down by the Supreme Court as to what constitutes involuntary manslaughter.

8. APPEAL AND ERROR—ORDINANCES—STATUTES—JUDICIAL NOTICE OF ORDINANCE—HARMLESS ERROR.

On a prosecution for manslaughter for killing a boy by recklessly driving an automobile on the public streets, it was not prejudicial error for the trial court to take judicial notice of the city ordinance regarding the speed at which such vehicles might be driven, where the statute fixed the same limit as the ordinance.

9. CRIMINAL LAW—MANSLAUGHTER—CAUSE OF DEATH—QUESTION FOR JURY.

Whether the death caused by the automobile was unavoidable or was the result of decedent's own carelessness was a question of fact properly submitted.

Error to recorder's court of Detroit; Jeffries, J. Submitted April 12, 1918. (Docket No. 132.) Decided June 3, 1918.

Arthur Pretswell was convicted of manslaughter and sentenced to imprisonment for not less than two nor more than fifteen years in the State prison at Jackson. Affirmed.

*Fitzgerald & Ring*, for appellant.

*Alex. J. Groesbeck*, Attorney General, *Charles H. Jasnowski*, Prosecuting Attorney, and *DeWitt H. Merriam*, Assistant Prosecuting Attorney, for the people.

OSTRANDER, C. J. (*dissenting*). On Commonwealth avenue, in Detroit, about half-past seven o'clock in

the evening of September 12, 1917, some children were standing and some were playing hide and seek. The goal was on the east side of Commonwealth avenue near the corner of Kirby avenue, an intersecting street. William Kerbyson, one of the children, a boy of about 13 years, had been in hiding on the west side of Commonwealth, and he ran out from between some houses there and into the street. Reaching the curb on the west side, running, he tried to stop, but ran or fell, or slid, into the street and either into the side of or into the path of an automobile going south on Commonwealth, and was injured. The people charge that he was killed and that respondent was responsible for the killing; that he "wilfully, unlawfully, feloniously, wantonly, negligently and recklessly" operated his car, and that he feloniously did kill and slay the said Kerbyson. But upon his trial, he was convicted of manslaughter and sentenced to be imprisoned for a period not less than two years, the statutory maximum sentence being fifteen years. A motion to set aside the verdict was denied.

Respondent contends in this court that the judgment should be reversed:

"*First.* Because the people failed to prove the *corpus delicti.*

"*Second.* Because the court erred in admitting the evidence of Edward Ross as to the speed of the car when he was not in a position to competently judge that speed.

"*Third.* Because the court erred in not directing a verdict of acquittal at the conclusion of the people's case.

"*Fourth.* Because the court erred in not charging the jury fully and completely as to what constitutes involuntary manslaughter.

"*Fifth.* Because the court erred in charging the jury as to the provisions of the ordinances of the city of Detroit controlling the operation of motor vehicles within the city and basing respondent's unlawful act upon the violation of such ordinance.

"*Sixth.* That the court erred in referring only to the evidence of the people's witnesses and not referring in any manner to the theory of the defense.

"*Seventh.* That the court erred in charging the jury upon the theory of contributory negligence of deceased when as a matter of fact the proofs show that the accident was unavoidable upon the part of respondent."

1. Neither in the motion to direct a verdict nor in a request to charge was the point made in the court below that proof of the *corpus delicti* had failed. It was first presented as a reason for granting the motion to set aside the verdict. The contention is, therefore, based upon no exception. As the argument is understood, the precise point raised is that the proofs fail to show that the boy who was injured by the automobile died as a consequence, or, indeed, is dead. It was an essential fact, required to be proved beyond a reasonable doubt. That it was not proven—that there was no testimony supporting such a conclusion—may be relied upon on a motion in arrest of judgment or to set aside the verdict and grant a new trial, and the point will be considered on appeal: this because a respondent charged with having committed a felony may sit by while the prosecution makes such a case as it can, and is not obliged, before verdict, to point out that an essential element of the offense which the prosecution is bound to prove has not been proved.

The record discloses that a boy, called in the information William H. Kerbyson, and by witnesses and counsel Corbson, was injured by an automobile on September 12, 1917, after his injury was lying in the street and was carried to the curb, where some one held him until a doctor came. Whether he was then alive or dead, the nature and extent of his injuries, does not appear, nor what was afterwards done with him. It appears further that on September 13, 1917, Dr. Kenneth Dick, one of the county physicians, per-

formed a *post mortem* examination upon a body at the rooms of a certain undertaker. The inquiry made of the doctor was: "*Q.* I ask you whether or not you performed a *post mortem* examination on the body of William H. Corbson?" the answer: "I did." The evidences of injury which he found were described by the doctor, and among other injuries he found a fractured skull which he said was the cause of death. He described the boy as about 13 years of age. There is no other testimony upon the subject. In support of the motion to set aside the verdict, the doctor made an affidavit in which he says he did not know the boy but had been informed that the body upon which he performed the autopsy was that of William H. Corbson. Nothing is claimed in the brief for respondent for a difference in the spelling or pronunciation of the name of the boy.

This record, the fact that this case is here upon such a point, illustrates the value of the rule of practice in the trial of criminal causes involving homicide which requires proof, first of all, of the *corpus delicti;* that a certain named person is dead, and somebody's criminality as the cause of the death. It is apparent that the prosecuting attorney at the trial principally directed effort to prove the identity of the driver of the car, careless or forgetful of the fact that it devolved upon the people to prove, beyond a reasonable doubt, that a homicide had been committed, and of the further fact that the respondent waived proof of nothing essential to his conviction.

Counsel for the people call attention to decisions of this court, among them *Foley* v. *People,* 22 Mich. 227, to the effect that, unless some question is made upon it in the trial court, a point may not be relied upon on writ of error. None of the cases cited is controlling here. It has been the rule in this State, at least since *People* v. *Lane,* 49 Mich. 340, was decided,

that even the respondent's extrajudicial confession of crime, if unsupported, is not sufficient evidence of the *corpus delicti.* See, also, *People* v. *Ranney*, 153 Mich. 293 (19 L. R. A. [N. S.] 443).

In deciding this case, it is assumed that upon objection or suggestion the people could have produced testimony directly tending to prove the death of the boy as the result of being struck by, or of running into, the automobile. But it must be held that what was offered was insufficient to sustain the burden resting upon the people.

2. No objection was made to the testimony.

3. The court ought not, for any reasons asserted at the trial, to have directed a verdict for respondent. There was testimony warranting the jury in finding that respondent was the driver of the car.

4. The principles laid down and applied in *People* v. *Barnes*, 182 Mich. 179, were fairly applied in the charge which was given.

5. The court apparently took judicial notice of the ordinance of the city of Detroit concerning the lawful speed at which automobiles may be driven. *People* v. *Quider*, 172 Mich. 280. Whether the rate of speed with which the car was driven was a lawful rate was of some importance at the trial, and the statute and ordinance fix the same limit. There was, therefore, no prejudicial error in mentioning the ordinance.

6. The charge, no amendment being requested, did not misstate the applicable law.

7. It was a question of fact whether the striking of the boy was unavoidable or was the result of his own carelessness.

The judgment should be reversed, the prisoner remanded to the custody of the sheriff of Wayne county, to be dealt with according to law, and a new trial had.

STONE, J., concurred with OSTRANDER, C. J.

FELLOWS, J.   When the people proved in this case that the defendant, driving at the rate of 30 to 35 miles an hour, ran over the boy William H. Corbson (or Kerbyson), and that the "body" of the boy was picked up from the street and carried to the grass plot, when Dr. Dick was asked the question, "I ask you whether or not you performed a *post mortem* examination on the body of William H. Corbson?" and unequivocally answered, "I did," and further testified that upon such *post mortem* examination he found a fractured skull, which he said was the cause of death, and he was not cross-examined at all, or his unequivocal testimony of identity any way shaken or questioned, the *corpus delicti* was, in my judgment, *prima facie* established.   This seems to have been the view of defendant's counsel upon the trial, as he made no suggestion that the *corpus delicti* had not been proved, but centered his efforts to the question of whether the identity of the defendant had been established.   Indeed, he affirmatively conceded that the death of the boy was established.   During the discussion of his motion for a directed verdict the following occurred:

"*The Court:* Well, now, let us see what the people have here, as a *prima facie* case:  Here is a car—this is upon the people's theory of this matter, and this is what the testimony tends to show, if the jury believe it, upon which they would be warranted in drawing a verdict from it—the testimony tends to show that this boy was killed.

"*Mr. Ellsworth* (defendant's attorney): Oh, yes."

Whether the *corpus delicti* was proved or not depended upon what occurred upon the trial, not upon what was made to appear by a *post* trial *ex parte* affidavit.   If defendant's counsel had not admitted that the death of the boy was established and had upon the trial cross-examined Dr. Dick and brought out from him the facts disclosed by his affidavit, an-

other question would be presented. I am impressed (1) That the *corpus delicti* was *prima facie* proved; and (2) by the admission made by defendant's counsel in open court the question is not now available to defendant. In a civil case a judicial admission is held to be binding, not only upon the trial then in hand, but also on a subsequent trial of the same case. *Connor* v. *Railway Co.*, 168 Mich. 29; *Johnston* v. *Cornelius*, 200 Mich. 209. It is not necessary to extend that doctrine to criminal cases in order to dispose of the instant case. Here defendant's counsel, in open court, in the presence of the defendant, conceded that the death of the boy was established. I do not think he, or other counsel substituted for him, can now on behalf of the defendant in this court, insist that it was not. For these reasons I do not agree with the Chief Justice that the case should be reversed on the assigned error that the *corpus delicti* was not proved. In other regards I agree with him. I think the conviction should be affirmed.

BIRD, MOORE, STEERE, BROOKE, and KUHN, JJ., concurred with FELLOWS, J.